IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ALEJANDRO RUSSIAN,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE, and ALLSTATE INSURANCE,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00864-RJS-JCB<br><br>Chief District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Before the court are two Motions: Plaintiff's Motion for Partial Summary Judgment[1] and Defendant Liberty Mutual Insurance's Motion for Summary Judgment.[2] Having reviewed the Motions and relevant briefing, the court DENIES Plaintiff's Motion and GRANTS Liberty's Motion.[3]

## BACKGROUND

This case arises from an automobile accident that took place in Salt Lake City, Utah in April 2021.[4] The accident involved three vehicles: (1) Plaintiff's vehicle, (2) the at-fault vehicle, and (3) a third vehicle.[5] The accident occurred when the at-fault vehicle rear-ended the third vehicle with such force that the third vehicle rear-ended Plaintiff's vehicle.[6] At the time of the

---

[1] Dkt. 19. *Plaintiff's Motion for Partial Summary Judgment and Declaratory Relief* (*Plaintiff's Motion*).

[2] Dkt. 16, *Motion for Summary Judgment* (*Liberty's Motion*).

[3] Pursuant to DUCivR 7-1(g), the court determines oral argument is unnecessary and resolves the Motions based on the parties' written memoranda.

[4] *Liberty's Motion* ¶ 12; Dkt. 17, *Plaintiff's Memorandum in Response to Defendant Liberty Mutual's Motion for Summary Judgment* (*Plaintiff's Response*) ¶ 12.

[5] *Liberty's Motion* ¶ 13; *Plaintiff's Response* ¶ 13.

[6] *Liberty's Motion* ¶ 14; *Plaintiff's Response* ¶ 14.

accident, Plaintiff was working as a driver for Lyft and was transporting two passengers.[7] It ultimately was determined Plaintiff was not at fault for the accident, and the insurance of the at-fault vehicle tendered its bodily injury policy limits in December 2021.[8] But Plaintiff alleges the policy limits tendered by the at-fault driver were insufficient to cover Plaintiff's damages.[9]

At the time of the accident, Plaintiff had in force two insurance polices: his personal insurance through Allstate, and a policy provided to him as a driver for Lyft through Liberty.[10] In December 2022, Plaintiff demanded underinsured motorist (UIM) coverage benefits from both Allstate and Liberty—a request which both companies denied.[11] Liberty denied UIM coverage on the bases that UIM coverage had been waived and rejected by a representative for Lyft in the state of Utah in March 2021.[12] The primary dispute between Liberty and Plaintiff is whether the UIM waiver form for the Liberty policy, which contained a single premium quote amount of $2,585,672 for UIM coverage at limits equal to Lyft's bodily injury liability limit, complied with Utah statutory law.[13]

Plaintiff alleges Allstate denied coverage on the basis that Plaintiff's policy contained a waiver of UIM coverage, which was enforceable at the time of the accident because Plaintiff was driving for Lyft.[14] Allstate disputes Plaintiff's framing of the issue. Allstate insists it denied UIM coverage because Plaintiff's UIM policy and Ride for Hire Endorsement specifically

---

[7] *Liberty's Motion* ¶ 15; *Plaintiff's Response* ¶ 15.

[8] *Liberty's Motion* ¶ 16; *Plaintiff's Response* ¶ 16.

[9] *Plaintiff's Response* ¶ 46.

[10] *Liberty's Motion* ¶ 17; *Plaintiff's Response* ¶ 17.

[11] *Liberty's Motion* ¶ 18; *Plaintiff's Response* ¶ 18.

[12] *Liberty's Motion* ¶ 19; *Plaintiff's Response* ¶ 19.

[13] *See generally Plaintiff's Response* ¶¶ 41–42; Dkt. 24, *Reply in Support of Liberty Mutual's Motion for Summary Judgment* (*Liberty's Reply*) at 2; *Plaintiff's Motion*.

[14] *Plaintiff's Motion* ¶ 17.

excludes from coverage bodily injury arising out of Plaintiff's active transport of clients for Lyft.[15]

Plaintiff brought the present lawsuit in Utah state court in October 2024, asserting claims against Defendants for breach of their insurance contracts and for breach of the implied duty of good faith and fair dealing.[16] Shortly thereafter, Defendants removed the case to federal court.[17] Liberty filed its Motion for Summary Judgment on January 31, 2025,[18] and Plaintiff filed his Motion for Partial Summary Judgment on March 17, 2025.[19] Both Motions are fully briefed and are ripe for review.[20]

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22] A fact is material if, under the governing substantive law, it could affect the outcome of the suit.[23]

---

[15] Dkt. 26, *Allstate's Memorandum in Opposition to Plaintiff's Motion for Partial Summary Judgment and Declaratory Relief* (*Allstate's Response*) at 6.

[16] *See* Dkt. 16-5, *Complaint*.

[17] Dkt. 2, *Notice of Removal*.

[18] *Liberty's Motion*.

[19] *Plaintiff's Motion*.

[20] *Liberty's Motion*; *Plaintiff's Response*; *Liberty's Reply*; *Plaintiff's Motion*; Dkt. 25, *Response to Plaintiff's Motion for Partial Summary Judgment and Declaratory Relief* (*Liberty's Response*); *Allstate's Response*; Dkt. 27, *Reply Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and Declaratory Relief* (*Plaintiff's Reply*).

[21] Fed. R. Civ. P. 56(a).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *Id.*; *see also United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) ("The substantive law of the case determines which facts are material.").

When applying this standard, the court views the evidence and makes all reasonable inferences in the light most favorable to the nonmoving party.[24]

In the Tenth Circuit, "the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."[25] When cross-motions for summary judgment are before the court, the motions are treated separately—"the denial of one does not require the grant of another."[26] Each "moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment."[27]

Once "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'"[28] Even though a defendant "does not have the ultimate burden of persuasion at trial," when moving for summary judgment, a defendant has "both the initial burden of production . . . and the burden of establishing that summary judgment is appropriate as a matter of law."[29] This burden may be met by either "producing affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[30] When determining whether a nonmovant has provided sufficient evidence to survive summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine

---

[24] *N. Nat. Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

[25] *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citation omitted).

[26] *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[27] *Pelt*, 539 F.3d at 1280 (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)).

[28] *Anderson*, 477 U.S. at 250 (citation omitted).

[29] *Pelt*, 539 F.3d at 1280 (citation omitted).

[30] *Id.* (citation omitted).

issue for trial."[31]  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.[32]  But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."[33]

## ANALYSIS

Liberty seeks dismissal of Plaintiff's claims against it because its insured, Lyft, rejected UIM coverage.[34]  Plaintiff responds by arguing (1) Liberty's UIM acknowledgment form was deficient under Utah statutory law;[35] and (2) Lyft's failure to verify Plaintiff had a policy that contained UIM coverage nullifies Liberty's UIM waiver under Utah statutory law.[36]  There are no genuine disputes of material fact with respect to Liberty's Motion, and the resolution of the Motion turns on principles of statutory interpretation.  Relatedly, Plaintiff seeks partial summary judgment from the court on the following issues: (1) that the Liberty UIM waiver is invalid and unenforceable; and (2) that the Allstate UIM waiver is invalid and unenforceable.[37]  The court first addresses Liberty's Motion.  Finding all claims against Liberty should be dismissed, it then addresses Plaintiff's Motion against Allstate.

### I.   Liberty's Motion

Liberty moves for summary judgment and seeks dismissal of all causes of action brought against it for breach of contract and breach of the implied covenant of good faith and fair

---

[31] *Anderson*, 477 U.S. at 249.

[32] *Id.* (citations omitted).

[33] *Id.* at 255.

[34] *Liberty's Motion* at 2.

[35] *Plaintiff's Response* at 18.

[36] *Id.* at 23.

[37] *Plaintiff's Motion* at 2.

dealing.[38] Plaintiff's only arguments in defense are (1) Liberty's UIM waiver is invalid under Utah Code § 31A-22-305.3(3)(b) (the UIM Statute);[39] and (2) Lyft's failure to verify Plaintiff had a policy that contains UIM coverage should nullify Liberty's UIM waiver under Utah Code § 13-51-108(6).[40] The resolution of these issues turns on an interpretation of Utah statutory law.

A federal court sitting in diversity[41] assesses state law claims based on the substantive law of the state.[42] The court's "objective when interpreting and applying state substantive law is to reach the same result that would be reached in state court."[43] If a state's highest court has interpreted a state statute, the court defers to that decision.[44] If not, the court predicts how that court would rule.[45] When statutory interpretation is needed in a diversity case, "this court must apply state rules of statutory construction."[46] Relevant here, the Utah Supreme Court has stated its "primary objective in construing enactments is to give effect to the legislature's intent."[47] To discern such intent, Utah courts "look first to the statute's plain language," read as a whole, and interpret the statute's provisions "in harmony with other statutes in the same chapter and related chapters."[48] If the language is ambiguous, Utah courts "look beyond the statute to legislative history [] to ascertain the statute's intent."[49]

---

[38] *Liberty's Motion* at 1.

[39] *See Plaintiff's Response* at 18.

[40] *Id.* at 23.

[41] Dkt. 2, *Notice of Removal of Action to United States District Court* ¶ 14.

[42] *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1223 (10th Cir. 2016) (citation omitted).

[43] *Id.* (citation omitted).

[44] *Id.* (citation omitted).

[45] *Id.* (citation omitted).

[46] *Id.* at 1224 (quoting *United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 573 F.3d 997, 1001 (10th Cir. 2009)).

[47] *LPI Servs. v. McGee*, 215 P.3d 135, 139 (Utah 2009) (citation omitted).

[48] *Id.* (citations omitted).

[49] *Id.* (citation omitted).

For context, under Utah law, an "underinsured motor vehicle" is a vehicle "which is covered under a liability policy at the time of an injury-causing occurrence, but which has insufficient liability coverage to compensate fully the injured party for all special and general damages."[50] UIM coverage "provides coverage for a covered person who is legally entitled to recover damages from an owner or operator of an underinsured motor vehicle because of bodily injury, sickness, disease, or death."[51] Utah law generally requires that every policy of insurance "purchased to satisfy the owner's or operator's security requirement" include UIM coverage.[52] Moreover, Utah law requires that all transportation network companies (TNC) maintain insurance that includes UIM coverage "where required by § 31A-22-305.3."[53]

However, these statutes are subject to an exception. The UIM Statute, Utah Code § 31A-22-305.3(3)(b), clarifies how an insured can lawfully reject UIM coverage:

> (b) For new policies written on or after January 1, 2001, the limits of underinsured motorist coverage shall be equal to the lesser of the limits of the named insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the named insured's motor vehicle policy, unless a named insured rejects or purchases coverage in a lesser amount by signing an acknowledgment form that:
>     (i) is filed with the department;
>     (ii) is provided by the insurer;
>     (iii) waives the higher coverage;
>     (iv) need only state in this or similar language that "underinsured motorist coverage provides benefits or protection to you and other covered persons for bodily injury resulting from an accident caused by the fault of another party where the other party has insufficient liability insurance"; and
>     (v) discloses the additional premiums required to purchase underinsured motorist coverage with limits equal to the lesser of the limits of the named insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the named insured's motor vehicle policy.

---

[50] Utah Code § 31A-22-305.3(1)(b)(i).

[51] *Id.* § 31A-22-305.3(2)(a).

[52] *Id.* § 31A-22-302(1)(c).

[53] *Id.* § 13-51-108(1)(E).

Importantly, acknowledgment forms that fail to comply with the (i)–(v) waiver requirements are invalid, and the insured is entitled to the statutorily prescribed level of UIM coverage.[54]

Here, Liberty insists the UIM acknowledgment form signed by Lyft on March 31, 2021 complied with all the waiver requirements listed above.[55] Specifically, Liberty claims the acknowledgment form (i) was filed with the Utah Insurance Department; (ii) was provided by Liberty Mutual; (iii) waived the higher coverage; (iv) included virtually identical language as the language required in § 31A-22-305.3(3)(b)(iv); and (v) disclosed an additional premium amount of $2,585,672.00 if UIM coverage was purchased at limits equal to the policy's bodily injury liability limits.[56] Plaintiff does not dispute § 31A-22-305.3(3)(b) provides an exception to the general requirement that policies include UIM coverage,[57] nor does Plaintiff dispute Liberty complied with the first four waiver requirements. Plaintiff's only challenge to the enforceability of Liberty's acknowledgment form is that it "fails to establish the fifth requirement under Section 31A-22-305.3(2)(b)."[58] More specifically, Plaintiff argues the form discloses only a single premium quote amount of $2,585,627.00 for UIM coverage at limits equal to the Lyft policy's bodily injury liability limit; it does not "disclose premiums and costs for . . . other levels" of UIM coverage.[59]

No Utah court has yet addressed the issue of whether the use of the word "premiums" in § 305.3(3)(b)(v) requires an insurer to include multiple premiums on its UIM acknowledgment

---

[54] *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 904 (Utah 2012).

[55] *Liberty's Motion* at 8.

[56] *Id.* at 8; Dkt. 16-3, *Exhibit C, Utah Bodily Injury Underinsured Motorists Coverage Selection/Rejection* (*UIM Rejection*).

[57] *Plaintiff's Response* at 17.

[58] *Id.* at 18.

[59] *Id.* at 20.

8

form.  Thus, the court must predict how Utah's highest court would rule.[60]  Here, applying Utah's rules of statutory construction, "look[ing] first to the statute's plain language" as a whole, and interpreting the statute's provisions "in harmony with other statutes in the same chapter and related chapters,"[61] the court determines disclosure of a single premium quote amount of $2,585,672 for UIM coverage at limits equal to the Lyft policy's bodily injury liability limit complies with the statute.

Indeed, § 305.3(3)(b) of the UIM Statute mandates "the limits of underinsured motorist coverage shall be equal to" the lesser of two alternatives.  The court refers to this statutorily mandated amount of UIM coverage as the Statutory Ceiling.  Insurance policies must provide UIM coverage at the Statutory Ceiling unless the insured "rejects or purchases coverage in a lesser amount" by signing a form that complies with § 305.3(3)(B)(i)–(v).[62]  Similar language is found in the disputed Section, § 305.3(3)(b)(v), which requires every valid UIM acknowledgment form to, at a minimum, disclose the "premiums" required to purchase UIM coverage with limits equal "to the lesser" of the same two alternatives, or, the Statutory Ceiling.[63]  It follows that if an insurer is required to disclose one Statutory Ceiling in its acknowledgment form, only one corresponding premium to purchase the Statutory Ceiling must be disclosed to properly reject coverage.  There appears to be no prohibition for an insurer to, for example, disclose multiple premiums in the event multiple limits are offered.  But at a minimum,

---

[60] *Etherton*, 829 F.3d at 1223 (citation omitted).

[61] *LPI Servs.*, 215 P.3d at 139 (citation omitted).

[62] Utah Code § 31A-22-305.3(3)(b).

[63] *Id.* § 31A-22-305.3(3)(b)(v).

the statute requires that the acknowledgment form disclose the cost to purchase the Statutory Ceiling.[64]

Plaintiff's proposed interpretation of the word "premiums" would lead to the absurd result of requiring an insurer to disclose two premiums for the single Statutory Ceiling in order for its insured to properly reject UIM coverage.[65] Plaintiff's interpretation is further undermined by the Utah Rules of Construction, which apply when construing statutes "in the Utah Code."[66] One of these Rules provides that "[t]he singular includes the plural, and the plural includes the singular."[67] Thus, "premiums" may be construed in the singular and the plural, depending on the number of UIM limits offered on the specific form. Tellingly, the same statute accounts for both the rejection and the purchase of UIM coverage "in a lesser amount" by signing a form that complies with the § 305.3(3)(B)(i)–(v) requirements.[68] It is understandable why "premiums" was used in the plural. If an insurer offers UIM coverage "in a lesser amount" under the UIM Statute, a compliant UIM acknowledgment form would necessarily involve more than one premium. There would be a premium for the "lesser amount" offered, and there would be a premium for the Statutory Ceiling. An acknowledgment form *rejecting* UIM coverage, on the other hand, requires the insurer to disclose only the premium associated with the Statutory Ceiling when no "lesser amount" is offered. In light of this, Plaintiff's attempt to strictly

---

[64] *Id.*

[65] *See Millett v. Clark Clinic Corp.*, 609 P.2d 934, 936 (Utah 1980) ("It is to be observed, moreover, that statutory enactments are to be so construed as to render all parts thereof relevant and meaningful, and that interpretations are to be avoided which render some part of a provision nonsensical or absurd.").

[66] Utah Code § 68-3-12.

[67] *Id.* § 68-3-12(1)(b).

[68] *Id.* § 31A-22-305.3(3)(b).

interpret "premiums" as requiring the disclosure of at least two premiums on Liberty's rejection form is unpersuasive.

Still, Plaintiff insists two Utah cases suggest Liberty's acknowledgment form is deficient. First, Plaintiff points to the case of *Salazar v. State Farm Mutual Automobile Insurance Company* where this court described a waiver that complied with the UIM Statute when it gave "the consumer options to purchase different amounts of . . . coverage, and provides the cost associated with each level of coverage."[69] However, *Salazar* involved a discussion about a version of the UIM Statute that did not allow rejection of UIM coverage—only the purchase of coverage in a lesser amount.[70] Again, a waiver offering UIM coverage in a lesser amount and disclosing the Statutory Ceiling as required by the UIM Statute would disclose multiple premiums for "each level of coverage."[71] The *Salazar* court never addressed whether a UIM rejection form is required to disclose multiple premiums, pursuant to Plaintiff's interpretation of the modern UIM Statute. *Salazar* is unpersuasive.

Second, Plaintiff points to Utah Court of Appeals case of *General Security v. Tipton* for the proposition that a valid waiver requires "that the insured be presented with the maximum amount of [UIM] coverage available, as well as lesser amounts, and then be allowed to choose."[72] Even setting aside the issue of how the statute at issue in *Tipton* dealt with uninsured

---

[69] No. 2:10CV1265DAK, 2012 WL 4056068, at *7 (D. Utah Sept. 14, 2012).

[70] *Id.* at *1 (citing the UIM Statute as follows: "the limits of underinsured motorist coverage shall be equal to the lesser of the limits of the insured's motor vehicle liability coverage or the maximum underinsured motorist coverage limits available by the insurer under the insured's motor vehicle policy, **unless the insured purchases coverage in a lesser amount** by signing an acknowledgment form that: (i) is filed with the department; (ii) is provided by the insurer; (iii) waives the higher coverage; (iv) reasonably explains the purpose of underinsured motorist coverage; and (v) discloses the additional premiums required to purchase" the required underinsured motorist coverage (emphasis added)).

[71] *Id.* at *7.

[72] 158 P.3d 1121, 1126 (Utah Ct. App. 2007).

11

motorist (UM) coverage and not UIM coverage, the case centered on the interpretation of an earlier version of the UM statute—a statute, like in *Salazar*, that did not contemplate UM coverage rejection.[73] Instead, the statute interpreted in *Tipton* allowed the insured to purchase "coverage in a lesser amount by singing an acknowledgment form provided by the insurer" that "disclose[d] the additional premiums required to purchase [UM] coverage with limits equal to" the lesser of two alternatives.[74] As discussed above, it is natural for the Utah Court of Appeals to interpret this statute as requiring the disclosure of "some amount greater than the 'lesser amount' the insured might purchase after being advised of the 'higher coverage' as well as the 'additional premiums required to purchase [UM] coverage'"[75] when UM rejection is not at issue. Ultimately, *Tipton*, like *Salazar*, has little bearing on this court's interpretation of the word "premiums" in the current version of UIM Statute.

At bottom, the court is satisfied that the plain language of the UIM Statute resolves the dispute between the parties regarding what must be disclosed. Liberty's disclosure of the premium for "Bodily Injury Underinsured Motorist Coverage at limits equal to [Lyft's] policy's bodily injury liability limit" on its acknowledgment form complied with the UIM Statute.

Plaintiff's second argument is equally unpersuasive. Plaintiff argues Lyft's failure to verify that Plaintiff had a policy containing UIM coverage should nullify the Liberty UIM acknowledgment form under Utah Code § 13-51-108(6).[76] Section 108(6) states: "If a transportation network company [TNC] does not purchase a policy that complies with Subsections (1) and (2) on behalf of a transportation network driver, the transportation network

---

[73] *Id.* at 1125–26.

[74] *Id.* (citing Utah Code § 31A–22–305(3)(b) (2000)).

[75] *Id.*

[76] *Plaintiff's Response* at 23.

12

company shall verify that the driver has purchased a policy that complies with Subsections (1) and (2)." For purposes of this argument, the court will consider Lyft a TNC. Subsection (1) requires as follows:

> (1) A transportation network company or a transportation network driver shall maintain insurance that covers, on a primary basis, a transportation network driver's use of a vehicle during a prearranged ride and that includes: . . . (e) underinsured motorist coverage **where required by Section 31A-22-305.3**.[77]

However, as discussed above, the UIM Statute (§ 31A-22-305.3) requires that an insurer provide UIM coverage unless coverage is rejected by signing a valid acknowledgement form.[78] Here, Lyft signed a valid acknowledgment form; thus, it was not required to maintain UIM coverage pursuant to the terms of § 31A-22-108(1). And as the condition precedent contained in § 13-51-108(6) that a TNC fails to "purchase a policy that complies with Subsection[] (1)" is not met, the requirement triggered by this condition precedent is not applicable in this case. In sum, Lyft had no obligation under the TNC statute to verify Mr. Russian carried UIM coverage.

Ultimately, Plaintiff's claims against Liberty depend entirely on the invalidity of Liberty's UIM acknowledgment form. And because Liberty's acknowledgment form complied with Utah law, and because all other legal arguments forwarded by Plaintiff are unsupported,

---

[77] Utah Code § 13-51-108(1) (emphasis added).

[78] *Id.* § 31A-22-305.3(3)(b).

Plaintiff's claims against Liberty fail as a matter of law.[79] Liberty's Motion is granted and all claims against it are dismissed.

## II. Plaintiff's Motion

Plaintiff brings his own Motion for Summary Judgment against Liberty and Allstate seeking a declaration that the Defendants' UIM waivers are invalid and unenforceable.[80] In the event the court agrees and finds the waivers failed to comply with Utah law, Plaintiff seeks a declaratory order stating which insurer is obligated to provide Plaintiff with UIM coverage for the collision.[81] As discussed above, Liberty's waiver was valid; thus, the portion of Plaintiff's Motion related to Liberty is denied as moot.

As to Allstate, Plaintiff claims Allstate's UIM "waiver" is invalid under Utah law because Plaintiff never signed or provided any other kind of written acknowledgment waiving or reducing his UIM coverage rights as required under the UIM Statute.[82] Allstate counters by explaining Plaintiff always had valid UIM coverage at the time of the subject accident, and Plaintiff purchased additional UIM coverage in the form of Allstate's Ride for Hire (RFH) Endorsement, which expanded Plaintiff's UIM coverage.[83] More specifically, under the original

---

[79] *See Complaint*. Specifically, Plaintiff's claims against Liberty are for breach of contract and breach of the implied covenant of good faith and fair dealing. *Id.* at 4–5. The only asserted breach of the contract was "refusal to acknowledge that coverage and pay the benefits required." *Id.* ¶ 39. Moreover, the grounds for Plaintiff's good faith claim are refusing to value the claim without conducting a reasonable investigation and failing to acknowledge UIM coverage under Utah law. *Id.* ¶ 43. As Liberty is correct about the enforceability of Lyft's rejection of UIM coverage, Liberty conducted a reasonable investigation and correctly rejected Plaintiff's claim for UIM coverage under the circumstances. To the extent Plaintiff includes a claim for negligence, *see, e.g.*, *id.* ¶ 45, such a claim is barred by the Economic Loss Rule. *See Storey v. Seipel*, No. 2:22-CV-00486-RJS-DAO, 2024 WL 4436609, at *4 (D. Utah Oct. 24, 2024) (applying Utah law and recognizing how the initial inquiry in an economic-loss analysis is whether a duty exists independent of any contractual obligations between the parties).

[80] *Plaintiff's Motion* at 2.

[81] *Id.*

[82] *Id.* at 14 (citing Utah Code § 31A-305.3(3)(b), which requires all new policies written on or after January 2, 2001 to provide UIM coverage unless the insured affirmatively waives UIM coverage "by signing an acknowledgment form").

[83] *Allstate's Response* at 1–2, 7–8.

UIM policy, UIM benefits were excluded in any Ride for Hire situation,[84] and under the RFH Endorsement, UIM coverage was expanded to include situations where Plaintiff was on standby—even when on-the-clock for a TNC.[85] Ultimately, Allstate argues that because Plaintiff was not on standby at the time of the accident, he was ineligible for UIM benefits.[86]

Plaintiff responds by arguing the exclusions in Allstate's RFH Endorsement effectively constitute a waiver of coverage; therefore, it must meet the minimum standards for waivers under Utah law.[87]

The court finds Plaintiff has not demonstrated as a matter of law that the UIM Statute is the proper vehicle to attack the enforceability of the Allstate policy's exclusions. Indeed, the UIM Statute focuses primarily on the requirements that all new policies written on or after January 1, 2001 provide UIM coverage equal to the Statutory Ceiling, unless the insured "rejects or purchases coverage in a lesser amount by signing" a form that complies with the UIM Statute.[88] It does not appear to account for a situation where the insured is *ineligible* to receive the Statutory Ceiling due to other exclusions. In other words, while the UIM Statute requires insurers to offer a specific amount UIM coverage in certain circumstances, it does not appear to vest insureds with UIM coverage contrary to agreed-upon exclusions in the policy.

Moreover, even accepting as true Plaintiff's argument that all UIM coverage exclusions effectively operate as a "rejection" of UIM coverage and constitute a failed acknowledgment form under the UIM Statute,[89] it is unclear whether Plaintiff's original policy with Allstate

---

[84] *Id.* at Ex. B.

[85] *Id.* at 8.

[86] *Id.*

[87] *Plaintiff's Reply* at 8–9.

[88] Utah Code § 31A-22-305.3(3)(b).

[89] *See Plaintiff's Reply* at 8.

complied with the UIM Statute. Indeed, Plaintiff's arguments against Allstate are centered on the fact that the RFH Endorsement was never signed and therefore could not comply with the UIM Statute.[90] But Allstate presents a compelling argument, supported by clear evidence, that under the *original* policy, UIM benefits were excluded in any Ride for Hire situation.[91] As such, Plaintiff's purchase of the RFH Endorsement only expanded the situations where UIM coverage was available to Plaintiff.[92] It follows that Plaintiff's "rejection" of UIM coverage, if any, occurred at the time of signing the original Allstate policy, not when the RFH Endorsement was issued. Plaintiff's failure to engage with this argument and provide the court with evidence of the original policy's noncompliance with the UIM Statute provides an alternative basis to deny his Motion.

Ultimately, Plaintiff has failed to carry his burden of demonstrating his entitlement to judgment as a matter of law against Allstate, and that portion of his motion must be denied.

## CONCLUSION

For the foregoing reasons, Liberty's Motion is GRANTED.[93] All of Plaintiff's claims brought against Liberty are DISMISSED. The part of Plaintiff's Motion brought against Liberty is DENIED AS MOOT, and the part of Plaintiff's Motion brought against Allstate is DENIED.[94] As Allstate did not move for summary judgment, Plaintiff's claims against Allstate survive.[95]

---

[90] *Plaintiff's Motion* at 15.

[91] *Allstate's Response* at 8 (citing *Allstate's Response* at Ex. B).

[92] *Id.*

[93] Dkt. 16.

[94] Dkt. 19.

[95] *See* DUCivR 7-1(a)(3) ("A party may not make a motion, including a . . . cross-motion in a response or reply.").

SO ORDERED this 21st day of May 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge